Filing # 147194820 E-Filed 04/06/2022 04:19:45 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR **MIAMI-DADE** COUNTY, FLORIDA
**CIVIL DIVISION**

**U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR SECURITIZED ASSET
BACKED RECEIVABLES LLC TRUST
2006-NC2, MORTGAGE PASS-THROUGH**   Case No.2019-027764-CA-01
**CERTIFICATES, SERIES 2006-NC2**

Plaintiff

vs.

**JORGE FERNANDEZ; Et. AL**

Defendants

## MOTION FOR LEAVE TO AMEND COMPLAINT

COMES NOW, the Plaintiff, **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC2,
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-NC2,** by and through its
undersigned attorney, and files this Motion for Leave to Amend Caption and to add Real Party of
Interest and in support of said Motion states as follows:

1. Plaintiff filed an action for foreclosure and recorded a Notice of Lis Pendens, same being
recorded in the Public records of Miami Dade County, Florida.

2. Plaintiff has determined that there was an error in its original Complaint in that it failed to
list the **FLORIDA DEPARTMENT OF REVENUE** As a party defendant as they hold a lien against the
parcel.

3. Plaintiff seeks to add a party Defendant, **FLORIDA DEPARTMENT OF REVENUE ,** and add
several omitted liens in favor of the **UNITED STATES OF AMERICA, DEPARTMENT OF
THE TREASURY – INTERNAL REVENUE SERVICE** who is already a party Defendant in
this action.

4. In compliance with Florida Rules of Civil Procedure , Plaintiff is attaching the proposed
amended complaint as Exhibit "A".

5. Plaintiff represents that no party Defendants will be prejudiced by the filing of this
Motion.

**WHEREFORE,** Plaintiff prays for this Court to grant an leave to Amend and letting stand
all prior Answers and Defaults.

LAW OFFICE OF GARY GASSEL, P.A.
2191 Ringling Boulevard
Sarasota, Florida 34237
Primary email: Pleadings@Gassellaw.com
Secondary email: Efiling@Gassellaw.com
(941) 952-9322
Fax: (941) 365-0907
Attorneys for Plaintiff

By: _____
    GARY I. GASSEL, ESQUIRE
    Florida Bar No. 500690

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been duly furnished by US First Class Mail and/or Eservice to:

JORGE FERNANDEZ AND CRISTINA JOHN
J. SPITTLER, JR., ESQ.
SPITTLER & ASSOCIATES, P.A.
1865 BRICKELL AVE., STE. TH-5
MIAMI, FL 33129
JJS@SPITTLERLAW.COM

UNITED STATES OF AMERICA,
DEPARTMENT OF THE
TREASURY-INTERNAL
REVENUE SERVICE
C/O US ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA
99 NE 4TH STREET, 13TH FLOOR
MIAMI, FL 33132
USAFLM.STATE.FORECLOSURE@USDOJ
.GOV

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR CTX MORTGAGE
COMPANY, LLC
CIO CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

Unknown tenants
John Doe & Jane Doe
8620 SW 85TH AVE
MIAMI, FL 33143-6930

this 5 day of April, 2022

By _____
   GARY GASSEL, ESQUIRE

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR **MIAMI-DADE** COUNTY, FLORIDA
**CIVIL DIVISION**

**U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR SECURITIZED
ASSET BACKED RECEIVABLES LLC
TRUST 2006-NC2, MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2006-NC2**                                       Case No.2019-027764-CA-01

       Plaintiff

vs.

**JORGE FERNANDEZ;** and all unknown
parties claiming by, through, under and
against the above named Defendant who are
unknown to be dead  or alive whether said
unknown  are  persons,  heirs,  devisees,
grantees, or other claimants; **UNKNOWN
SPOUSE  OF  JORGE  FERNANDEZ;
CRISTINA  FERNANDEZ;  UNKNOWN
SPOUSE  OF  CRISTINA  FERNANDEZ;
MERS  AS  NOMINEE  FOR  CTX
MORTGAGE  COMPANY,  LLC;
FLORIDA  DEPARTMENT  OF
REVENUE;  UNITED  STATES  OF
AMERICA,  DEPARTMENT  OF  THE
TREASURY – INTERNAL  REVENUE
SERVICE; TENANT I/UNKNOWN TENANT;
TENANT II/UNKNOWN TENANT; TENANT
III/UNKNOWN  TENANT  and  TENANT
IV/UNKNOWN TENANT,** in possession  of the
subject real property,
       Defendants

---

## VERIFIED AMENDED COMPLAINT

COMES  NOW  the  Plaintiff,  **U.S.  BANK  NATIONAL  ASSOCIATION,  AS
TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-
NC2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-NC2,** authorized
by law to transact business in the State of Florida, by and through its undersigned attorney, and
files its Amended Complaint against the Defendants, **JORGE FERNANDEZ;** and all unknown
parties claiming by, through, under and against the above named Defendant who are unknown to

be dead or alive whether said unknown are persons, heirs, devisees, grantees, or other claimants; UNKNOWN SPOUSE OF JORGE FERNANDEZ; CRISTINA FERNANDEZ; UNKNOWN SPOUSE OF CRISTINA FERNANDEZ; MERS AS NOMINEE FOR CTX MORTGAGE COMPANY, LLC; FLORIDA DEPARTMENT OF REVENUE; UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE; TENANT I/UNKNOWN TENANT; TENANT II/UNKNOWN TENANT; TENANT III/UNKNOWN TENANT and TENANT IV/UNKNOWN TENANT, in possession of the subject real property, and in support of the same states as follows:

## FACTS COMMON TO ALL COUNTS

1.      This is an action within the jurisdiction of this Honorable Court, to-wit: an amount in excess of Thirty Thousand Dollars ($30,000.00) for real property located in Miami-Dade County, Florida.

2.      Defendant/s **JORGE FERNANDEZ AND CRISTINA FERNANDEZ**, executed and delivered a Mortgage Deed in favor of **NEW CENTURY MORTGAGE CORPORATION**, known as Mortgagee, dated September 21, 2005 and recorded on September 27, 2005 in O.R. Book 23813, Pages 3018 of the Public Records of Miami-Dade County, Florida. The same is attached hereto as **Exhibit "A"**.

3.      Accompanying said Mortgage Deed was a Promissory Note securing payment thereof which was executed and delivered by Defendant/s **JORGE FERNANDEZ** on September 21, 2005. A copy of said Promissory Note shows an endorsement from the original lender payable to blank (on the backside of the note) is attached hereto as **Exhibit "B"**.(1) The Note and Mortgage were subsequently modified by two recorded loan modification agreements,

---

[1] Plaintiff has physical possession of the original promissory note and mortgage prior to the date of the filing of the complaint in this action. Plaintiff pursuant to Florida Statute 673.3011 owns and holds the original promissory note prior to the date on which the complaint was filed and has standing to bring this action.

effective August 2, 2009 and recorded at O.R. Book 27299  Page 1954of the Public Records of Miami-Dade County, Florida and effective December 1, 2017  at O.R. Book 30847 Page 771of the  the Public Records of Miami-Dade County, Florida. Copies of the recorded loan modification agreements are attached hereto as **Exhibit "B-1"**.

4.      Mortgagee, **NEW CENTURY MORTGAGE CORPORATION** assigned its mortgage to Plaintiff, **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-NC2,** which was recorded on April 16, 2012, at O.R. Book 28073, Page 3975, the Public Records of Miami-Dade County, Florida. A copy of that assignment is attached hereto as **Exhibit "C"**.

5.      Plaintiff, **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-NC2** as a matter law, holds and owns the Mortgage Deed and Promissory Note prior to the date of the filing of this action and has standing to bring this foreclosure action.

6.      The legal description of the subject property is, to-wit:

LOT 4, BLOCK 8, KENDALL POINT FIRST ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 77, PAGE 31, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

7.      The property's title is now vested in the name of **JORGE FERNANDEZ** and **CRISTINA FERNANDEZ,** husband and wife.

## COUNT I
## COMPLAINT FOR FORECLOSURE

Plaintiff realleges Paragraphs 1 through 7 herein above and incorporates the same herein by reference.

8.      This is an action to foreclose a Mortgage Deed on real property located in Miami-

Dade County, Florida against Defendants **JORGE FERNANDEZ and CRISTINA FERNANDEZ**, and all other named Defendants who are believed not to be under any physical or legal disability and believed not to be members of the military of the United States of America.

9.    Defendants **JORGE FERNANDEZ and CRISTINA FERNANDEZ**, defaulted under terms and conditions of the Mortgage Deed and Promissory Note by failing to make payments due and owing from April 1, 2018 and all subsequent payments.

10.    Plaintiff hereby demands payment and declares the full amount now due and payable and accelerates the outstanding balance due under the terms and conditions of the Promissory Note and Mortgage Deed.

11.    Plaintiff owns and holds the Mortgage and Promissory Note.

12.    Plaintiff alleges that Defendant/s is/are unwilling and unable to comply with Plaintiff's demand.

13.    Plaintiff as of April 1, 2018 is owed the principal sum of $511,213.35, along with a deferred principal balance of $220,331.68.

14.    Plaintiff alleges that on October 14, 2018 it has made written demand of Defendant/s to cure said mortgage balance which Defendant/s have been unwilling or unable to do. All conditions precedent to bringing this cause of action have been met or waived. Copies of same are attached hereto as **Exhibit "D".**

15.    Plaintiff is owed interest from March 1, 2018 plus the accompanying expense of title search for the examination and determination of the necessary parties, filing fees, advances on real property taxes, insurance, and other fees.

16.    Plaintiff alleges that Defendant, UNKNOWN SPOUSE OF JORGE FERNANDEZ may claim an interest in the subject property by virtue of marriage and or homestead, however, any claim of right, title and interest in and/or to the subject property is junior and inferior to that

of Plaintiff.

17.    Plaintiff alleges that Defendant, UNKNOWN SPOUSE OF CRISTINA FERNANDEZ may claim an interest in the subject property by virtue of marriage and or homestead, however, any claim of right, title and interest in and/or to the subject property is junior and inferior to that of Plaintiff.

18.    Plaintiff alleges that all unknown parties claiming by, through, under and against the above named Defendant who are unknown to be dead or alive whether said unknown are persons, heirs, devisees, grantees, or other claimants may claim an interest in the subject property as a potential heir; however any claim of right, title and interest in the subject property by virtue of marriage, however, any claim of right, title and interest, in and/or to the subject property is junior and inferior to that of Plaintiff.

19.    Plaintiff alleges that Defendant MERS AS NOMINEE FOR CTX MORTGAGE COMPANY, LLC, may hold some right, title or interest in said subject property by virtue of a Second Mortgage recorded in O.R. Book 24701, Page 4833 of the Public Records of Miami-Dade County, Florida, however, any claim of right, title or interest in the subject property is junior and inferior to that of Plaintiff.

20.    Plaintiff alleges that Defendant FLORIDA DEPARTMENT OF REVENUE, may hold some right, title or interest in said subject property by virtue of a Warrant recorded in O.R. Book 31350, Page 1075 of the Public Records of Miami-Dade County, Florida, however, any claim of right, title or interest in the subject property is junior and inferior to that of Plaintiff.

21.    Plaintiff alleges that Defendant UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY – INTERNAL REVENUE SERVICE, may hold some right, title or interest in said subject property by virtue of:

   a.   Notice of Federal Tax Lien recorded in O.R. Book 27336, Page 3332

   b.   Notice of Federal Tax Lien recorded in O.R. Book 28386, Page 2634

c.  Notice of Federal Tax Lien recorded in O.R. Book 28891, Page 4093

d.  Notice of Federal Tax Lien recorded in O.R. Book 29375, Page 281

e.  Notice of Federal Tax Lien recorded in O.R. Book 30226, Page 1327

f.  Notice of Federal Tax Lien recorded in O.R. Book 30317, Page 3890

g.  Notice of Federal Tax Lien recorded in O.R. Book 31129, Page 2522

h.  Notice of Federal Tax Lien recorded in O.R. Book 31430, Page 4625

i.  Notice of Federal Tax Lien recorded in O.R. Book 31549, Page 2956

of the Public Records of Miami-Dade County, Florida, however, any claim of right, title or interest in the subject property is junior and inferior to that of Plaintiff. A copy of the FTLs are attached hereto as **Exhibit "E".**

22.  Plaintiff alleges that Defendant **TENANT I / UNKNOWN TENANT**, might hold some interest in said property as a tenant subject to an oral or written lease agreement by and between the Defendants, however, any claim of right, title and interest in and/or to the subject property is junior and inferior to that of Plaintiff.

23.  Plaintiff alleges that Defendant **TENANT II/ UNKNOWN TENANT**, might hold some interest in said property as a tenant subject to an oral or written lease agreement by and between the Defendants, however, any claim of right, title and interest in and/or to the subject property is junior and inferior to that of Plaintiff.

24.  Plaintiff alleges that Defendant **TENANT III / UNKNOWN TENANT**, might hold some interest in said property as a tenant subject to an oral or written lease agreement by and between the Defendants, however, any claim of right, title and interest in and/or to the subject property is junior and inferior to that of Plaintiff.

25.  Plaintiff alleges that Defendant **TENANT IV/ UNKNOWN TENANT**, might hold some interest in said property as a tenant subject to an oral or written lease agreement by and between the Defendants, however, any claim of right, title and interest in and/or to the subject

property is junior and inferior to that of Plaintiff.

26.     Plaintiff has caused conditions precedent to the commencement of this action to have occurred and all conditions precedent to the defense to this action have otherwise been waived.

27.     **Pursuant to the UNITED STATES CODE 15 U.S.C. ' 1692 Fair Debt Collection Act, the filing of a civil action complaint does not constitute an initial communication and a notice is not required.**

28.     Plaintiff can be obligated for the expense of liens or assessments as recorded in the Public Record for non-payment of fees, dues, or obligations.

29.     Plaintiff is obligated to advance costs and expenses for payment of insurance, taxes and the like to protect its mortgage.

30.     A copy of the loan servicer's Power of Attorney to execute documents on behalf of Plaintiff is attached hereto as **Exhibit "F"**.

31.     Plaintiff has retained the undersigned attorney to represent it in this cause and is obligated to pay a reasonable fee for services.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

A.      That the Court find and order that Plaintiff has a lien upon the property described in the Mortgage Deed for the sum of money found to be due Plaintiff.

B.      That the Court will ascertain the amount of money due the Plaintiff for principal and interest on the Promissory Note and for abstracting, taxes, expenses and costs, including attorney's fees, which Plaintiff is entitled to recover in this action plus interest thereon.

C.      That the Court find and order that Plaintiff's Mortgage lien on the property is superior and paramount to all liens, rights, title and interest of Defendant, or other parties claiming by, through or under them, and that such liens, rights, title or interest of the Defendants or any party claiming by, through or under them, be forever barred and foreclosed.

D.      That the Court take an accounting of the sums due Plaintiff under the Promissory Note and Mortgage Deed, and if the sums are not paid within a time set by the Court, that the Court foreclose the Mortgage Deed and the property be sold by the

Clerk of the Court to satisfy Plaintiff's lien in accordance with the provisions of Section 45.031, Florida Statutes.

E.   That the Court order delivery and possession of the property to the foreclosure sale purchaser upon proof made of the demand or refusal of any Defendant to surrender said possession, and the Clerk of the Court be directed to issue a Writ of Possession without further order of the Court.

F.   That the Court enter an Order requiring Defendant to deposit all rents from the property, if any, in the registry of the Court pending adjudication of Plaintiff's right to rents, in accordance with Section 697.07, Florida Statutes.

G.   That the Court retain jurisdiction of this action in order to make any and all further order and judgments as may be necessary and proper, including, without limitation, Writs of Possession, deficiency judgments and all other relief under Florida law.

H.   The Court award any other relief that is necessary and just.

**LENDERS VERIFICATION PURSUANT TO F.R.C.P. 1.115(e)**

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief further i) Plaintiff is entitled to enforce the mortgage and promissory note ii) the attached documents are true and accurate iii) the allegations regarding default are true and accurate iv) notice required pursuant to the terms of the note and mortgage has/have been sent v) Plaintiff has retained the Law Office of Gary Gassel, P.A. in this action and is obligated to pay a reasonable attorney=s fee for service rendered herein

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-NC2** by SPECIALIZED LOAN SERVICING, LLC its Attorney in Fact

By: _____

_____
[Print Name & Title]        Second Assistant Vice President

**Steven Ross**

**COLORADO NOTARIAL JURAT**   MAR 3 0 2022

STATE OF COLORADO   )
COUNTY OF ARAPAHOE  )

Subscribed and sworn before me in the County of **Arapahoe County.** , State of Colorado, this _March 30, 2022_ by   **Steven Ross**
_____

SUSAN LEMERAND
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174018735
MY COMMISSION EXPIRES 05/03/2025

_____
Notary's Official Signature

LAW OFFICE OF GARY GASSEL, P.A.
2191 Ringling Boulevard
Sarasota, Florida 34237
Primary email: Pleadings@Gassellaw.com
Secondary email: Efiling@Gassellaw.com
Telephone: (941) 952-9322
Fax: (941) 365-0907
Attorneys for Plaintiff

By:
GARY GASSEL, ESQUIRE
Florida Bar No. 500690

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via regular U.S. Mail to:

JORGE FERNANDEZ
CRISTINA FERNANDEZ
c/o JOHN J. SPITTLER, JR., ESQ.
SPITTLER & ASSOCIATES, P.A.
1865 BRICKELL AVE., STE. TH-5
MIAMI, FL 33129
JJS@SPITTLERLAW.COM

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
AS NOMINEE FOR CTX MORTGAGE
COMPANY, LLC
CIO CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

UNITED STATES OF AMERICA,
DEPARTMENT OF THE
TREASURY-INTERNAL
REVENUE SERVICE
c/o US ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA.
99 NE 4TH STREET, 13TH FLOOR
MIAMI, FL 33132
USAFLM.STATE.FORECLOSURE@USDOJ.GOV

Unknown Tenants
John Doe
Jane Doe
8620 SW 85TH AVE
MIAMI, FL 33143-6930

this ___ day of _____, 2022

By _____
GARY GASSEL, ESQUIRE

# Exhibit "A"

# to Plaintiff's Complaint

Return To:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

This document was prepared by:
New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  September 21, 2005 ,
together with all Riders to this document.
(B) "Borrower" is JORGE FERNANDEZ and CRISTINA FERNANDEZ, Husband and Wife

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                            Form 3010  1/01
-6(FL) (0005).02
Page 1 of 16                          Initials:
         VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated September 21, 2005
The Note states that Borrower owes Lender THREE HUNDRED NINETY THOUSAND AND 00/100

Dollars
(U.S. $390,000.00             ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 10/01/2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(FL) (0005).02                          Page 2 of 16                          Form 3010   1/01

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the County                    [Type of Recording Jurisdiction]
of Miami-dade                                                                              [Name of Recording Jurisdiction]:
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 3040340140380                                which currently has the address of
8620 SW 85TH AVENUE                                                                               [Street]
MIAMI                                                            [City], Florida 33143            [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: _____

-6(FL) (0005).02                          Page 3 of 16                          Form 3010   1/01

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest

shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of

-6(FL) (0005).02                          Page 10 of 16                    Initials: _____        Form 3010   1/01

any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

Initials: CKJC

-6(FL) (0005).02                              Page 11 of 10                              Form 3010   1/01

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Initials: ___

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____                    _____ (Seal)
JULIE BORGES                                  JORGE FERNANDEZ              -Borrower

                                              8620 SW 85TH AVENUE
                                              MIAMI, FL 33143            (Address)
_____                    _____ (Seal)
CLAUDIA MONSALVE                              CRISTINA FERNANDEZ          -Borrower

                                                                         (Address)

_____ (Seal)             _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Address)          _____ (Address)

_____ (Seal)             _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Address)          _____ (Address)

_____ (Seal)             _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Address)          _____ (Address)

-6(FL) (0005).02                  Page 15 of 16                   Form 3010   1/01

STATE OF FLORIDA,   Miami-Dade                                    County ss:
The foregoing instrument was acknowledged before me this September 21, 2005        by
JORGE FERNANDEZ AND CRISTINA FERNANDEZ

who is personally known to me or who has produced Fl Drivers Licenses   as identification.

_____
Notary Public

JULIE BORGES
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION # DD193049
EXPIRES 03/29/2007
BONDED THRU 1-888-NOTARY1

-6(FL) (0005).02                          Page 10 of 10                    Initials: _____        Form 3010   1/01

# Exhibit A

Lot 4, Block 8, KENDALL POINT FIRST ADDITION, according to the Plat thereof, as recorded in Plat Book 77, Page 31, of the Public Records of Miami-Dade County, Florida.

Parcel Identification Number: 30-4034-014-0380

File Number:

DoubleTime®

# Exhibit "B"

# to Plaintiff's Complaint



# NOTE

September 21, 2005                           MIAMI                                Florida
[Date]                                        [City]                                 [State]

8620 SW 85TH AVENUE, MIAMI, FL  33143

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $390,000.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of          6.775 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st        day of each month beginning on November 1, 2005            .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below
that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to
interest before Principal. If, on 10/01/2035            , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612
                                                           or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 2,536.02

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal
is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."
Except as provided below, I may make a Full or Partial Prepayment at any time. If I make a Partial Prepayment equal to
one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial
Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full Prepayment at
any time. However, if within the first Thirty-six             months after the execution of the Mortgage, I make any
prepayment(s) within any 12-month period the total amount of which exceeds twenty
percent (            20 %) of the original Principal amount of this loan, I will pay a prepayment charge in an amount
equal to the payment of six                                                        ( 6              ) months'
advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds
twenty                                        percent (              20 %) of the original Principal
amount of the loan.

FLORIDA FIXED RATE NOTE - Single Family - With Prepayment Penalty

-105N(FL) (0302)                                      2/03
Page 1 of 3                                    Initials: [signature]
VMP MORTGAGE FORMS - (800)521-7291

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. APPLICABLE LAW**

This Note shall be governed by the laws of the State of Florida. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

 -105N(FL) (0302)          Page 2 of 3          Initials:  2/03

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JORGE FERNANDEZ                 -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                          -Borrower

*[Sign Original Only]*

Pay to the order of, without recourse

New Century Mortgage Corporation

By:

Steve Nagy

A.V.P./Records Management

# Exhibit "B-1"

# to Plaintiff's Complaint

CFN: 20100357216 BOOK 27299 PAGE 1965
DATE:05/27/2010  12:17:25 PM
MTG DOC 50.40
INTANGIBLE 28.72
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Document Prepared By:
Individual's Name/Title:
JAMES WHITE

WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SOUTH CAROLINA 29715

When Recorded Mail To:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA  92799-7670
Parcel No. 30 40340140380

[Space Above This Line for Recording Data]

Original Recorded Date: SEPTEMBER 27, 2005    Fannie Mae Loan No.:
Original Principal Amount: $   390,000.00       Loan No.:

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 4TH day of AUGUST, 2009
between  JORGE FERNANDEZ AND CRISTINA FERNANDEZ, HUSBAND AND WIFE

("Borrower") and  WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY
("Lender"),

amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and
Timely Payment Rewards Rider, if any, dated SEPTEMBER 21, 2005                  and recorded in
Book or Liber  23813, at page(s) 3018, Instrument No. 2005R1011658   of the Official   Records of
(Name of Records)
MIAMI-DADE COUNTY, FLORIDA                       , and (2) the Note bearing the same date as, and
(County and State, or other jurisdiction)
secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at

8620 SOUTHWEST 85TH AVENUE, MIAMI, FLORIDA 33143
(Property Address)

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument    Form 3179 1/01 (rev. 01/09)    (page 1 of 5)
First American Loan Production Services                                                               FLORIDA
First American Real Estate Solutions LLC
FALPS® FLXM3179  Rev. 06-17-07

CFN: 20100357216 BOOK 27299 PAGE 1966

the real property described being set forth as follows:

LOT 4, BLOCK 8, KENDALL POINT FIRST ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 77, PAGE 31, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of SEPTEMBER 1, 2009 , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 404,361.50 , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.775 %, from SEPTEMBER 1, 2009 . Borrower promises to make monthly payments of principal and interest of U.S. $ 2,756.10 , beginning on the 1ST day of OCTOBER, 2009 , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 6.775 % will remain in effect until principal and interest are paid in full. If on OCTOBER 01, 2035 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument        Form 3179 1/01 (rev. 01/09)    (page 2 of 3)
First American Loan Production Services                                                                           FLORIDA
First American Real Estate Solutions LLC
FALPS® FLFM3179-2  Rev. 06-17-09

CFN: 20100357216 BOOK 27299 PAGE 1967

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT - Single Family   Fannie Mae Uniform Instrument   Form 3179 1/01 (rev. 01/09)   (page 1 of 5)
First American Loan Production Services   FLORIDA
First American Real Estate Solutions LLC
FALPS# FLFM3179-3  Rev 06-17-09

CFN: 20100357216 BOOK 27299 PAGE 1968

6.   Pursuant to Section 199.145(4)(b), Florida Statutes, additional nonrecurring intangible tax is due.  This Mortgage is given in connection with the refinancing of an obligation secured by an existing mortgage, recorded in Official Records Book 23813, Page 3018 Instrument No. 2005R1011658 , Public Records of MIAMI-DADE County, Florida from the Mortgagor hereunder to the Mortgagee hereunder,  or to the assignor of the Mortgagee hereunder. As of the date of refinancing, the unpaid principal balance of the original obligation, plus accrued but unpaid interest, secured by the existing mortgage is equal to $ 374,633.19 .  The principal balance of the new obligation secured by this Mortgage is $ 404,361.50 , which amount represents, as of the refinancing, the excess of the unpaid principal balance of the original obligation,  plus accrued but unpaid interest.  Notwithstanding anything to the contrary contained in the foregoing, if the obligor under the new obligation is not liable to the obligee under the obligation secured by this Mortgage,  then the additional nonrecurring intangible tax shall be computed on the entire principal balance of the new obligation.

WELLS FARGO BANK, N.A., D/B/A AMERICA'S SERVICING COMPANY

Name: Alisa M. Rodwell _____ (Seal)
Its: VP of Loan documentation 3/15/09 - Lender

JORGE FERNANDEZ _____ (Seal)
- Borrower

_____ Mailing Address

CRISTINA FERNANDEZ _____ (Seal)
- Borrower

Fernandez 3/15/09 _____ Mailing Address

_____ (Seal)
- Borrower

_____ (Seal)
- Borrower

- Witness Signature and Printed Name          - Witness Signature and Printed Name
JOSE L. RODRIGUEZ                              Gloria Orrett

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument    Form 3179 1/01 (rev. 01/09)    (page 4 of 5)
First American Loan Production Services                                                                FLORIDA
First American Real Estate Solutions LLC
FALPS# FLFM3179-4 Rev. 05-17-09

CFN: 20100357216 BOOK 27299 PAGE 1969

[Space Below This Line for Acknowledgments]

**BORROWER ACKNOWLEDGMENT**

STATE OF FLORIDA

COUNTY OF _____ Dade

The foregoing instrument was acknowledged before me this 8/15/09 _____ by
JORGE FERNANDEZ AND CRISTINA FERNANDEZ

who is personally known to me or who has produced ____DL____ as identification.

(Signature of person taking acknowledgment)

Lizzette J. Inchaustegui
(Name typed, printed or stamped)

Notary
(Title or rank)

(serial number, if any)

LIZZETTE J INCHAUSTEGUI
MY COMMISSION # DD 780025
EXPIRES: February 27, 2012
Bonded Thru Notary Public Underwriters

**LENDER ACKNOWLEDGMENT**

STATE OF SOUTH CAROLINA

COUNTY OF YORK

The foregoing instrument was acknowledged before me this Aug 20TH 2009 _____ by
ALISA M. CODWELL, VP of loan documentation
of Wells Fargo Bank NA on behalf of ASC
a National Association _____ corporation, on behalf of the corporation.
He/She is personally known to me or who has produced Drivers License as identification.

Jill Reese
(Signature of person taking acknowledgment)

Jill Reese
(Name typed, printed or stamped)

Notary
(Title or rank)

(serial number, if any)

OFFICIAL SEAL
Notary Public
State of South Carolina
JILL REESE
My Commission Expires May 22, 2010

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 01/09)     (page 5 of 5)
First American Loan Production Services                                                                      FLORIDA
First American Real Estate Solutions LLC
FALPS© FLFM3179-5 Rev 06-17-09

# Exhibit A

Lot 4, Block 8, KENDALL POINT FIRST ADDITION, according to the Plat thereof, as recorded in Plat Book 77, Page 31, of the Public Records of Miami-Dade County, Florida.

Parcel Identification Number: 30-4034-014-0380

File Number:

DoubleTime

CFN: 20180063315 BOOK 30847 PAGE 771
DATE:01/30/2018 02:33:44 PM
MTG DOC 1,162.00
INTANGIBLE 663.97
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

After recording please return to:
SPECIALIZED LOAN SERVICING LLC

8742 LUCENT BLVD, SUITE 300
HIGHLANDS RANCH, CO 80129

This document prepared by:
SPECIALIZED LOAN SERVICING LLC

8742 LUCENT BLVD, SUITE 300
HIGHLANDS RANCH, CO 80129

Tax Parcel ID No.: 30-4034-014-0380

—————————[Space Above This Line For Recording Data]—————————
Original Principal Amount $390,000.00
Unpaid Principal Amount $402,452.85                    Loan No ████████
New Principal Amount $734,438.94
Total Cap Amount $331,986.09

# MODIFICATION AGREEMENT

Executed on this day: December 18, 2017
Borrower ("I"): JORGE FERNANDEZ whose address is 8620 SW 85TH AVE, MIAMI, FL 33143
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For
purposes of this document words signifying the singular (such as "I") shall include the plural (such as
"we") and vice versa where appropriate.
Lender or Servicer ("Lender"): SPECIALIZED LOAN SERVICING LLC whose principal place of business
and mailing address is 8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO 80129 ("Lender").
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): September 21,
2005

Original security instrument in the amount of $390,000.00 and recorded on September 27, 2005 in Book,
Volume, or Liber No. 23813, at Page 3018 (or as Instrument No. 2005R1011658) , in the Office of the
County Clerk or Register of MIAMI-DADE County, State of FLORIDA.

Loan Number: ████████

Property Address ("Property"): 8620 SW 85TH AVE, MIAMI, FL 33143

Legal Description: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

————————————————————————————————————————————
Modification Agreement
Proprietary W3078II                        Page 1 of 9                        90386FL 07/17

CFN: 20180063315 BOOK 30847 PAGE 772

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent; and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. Property Type: Single Family

   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on December 1, 2017 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on January 1, 2018.

   A. The new Maturity Date will be: **February 25, 2036.**

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges) and deferred principal

---

and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $734,438.94 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   $220,331.68 of the New Principal Balance shall be deferred (the 'Deferred Principal Balance') and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the 'Interest Bearing Principal Balance' and this amount is $514,107.26. Interest at the rate of 3.875% will begin to accrue on the Interest Bearing Principal Balance as of December 1, 2017 and the first new monthly payment on the Interest Bearing Principal Balance will be due on January 1, 2018. My payment schedule for the modified Loan is as follows

Borrower promises to make monthly payments of principal and interest of U.S. $2,108.85 beginning on January 1, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. I will make these payments every month, in addition to 1 final balloon payment, consisting of deferred principle in the amount of $220,331.68 and additional unpaid principal amount of $373,345.43. The Balloon payment amounts stated are if all monthly payments have been made as scheduled. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be $1,067.13. Your initial total monthly payment will be $3,176.98.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the  Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   If on February 25, 2036, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the  Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4.   **Additional Agreements.** I agree to the following:

---

Modification Agreement
Proprietary W3078H

Page 3 of 9

90386FL 07/17

CFN: 20180083315 BOOK 30847 PAGE 774

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires



CFN: 20180063315 BOOK 30847 PAGE 775

Interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.    That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in
accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.    That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.    That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s),

then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

CFN: 20180063315 BOOK 30847 PAGE 777

_____ (Seal)   Date: 12-22-17 _____

JORGE FERNANDEZ
Post-Office Address: 8620 SW 85TH AVE,
MIAMI, FL 33143

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____ Trustee of the   _____ Trust Instrument dated

_____ For the benefit of   _____ (Borrower)

## ACKNOWLEDGMENT

State of Florida                          §
County of Miami Dade                §

The foregoing instrument was acknowledged before me on 12-22-17 _____ by
JORGE   FERNANDEZ   who   is   personally   known   to   me   or   who   has   produced
Fl Drivers license, as identification.

PATRICIA RODRIGUEZ
Notary Public - State of Florida
Commission # FF 200233
My Comm. Expires May 5, 2019
Bonded through National Notary Assn.

Signature of Person Taking Acknowledgment

Patricia Rodriguez
Name Type, Printed or Stamped

Title or Rank

Serial Number, if any: _____

(Seal)                          My Commission Expires: _____

Modification Agreement
Proprietary W30781t                    Page 7 of 9                    90396FL 07/17

CFN: 20180063315 BOOK 30847 PAGE 778

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
SPECIALIZED LOAN SERVICING LLC

By: _____   -Lender      _____
                                            Date of Lender's Signature
Clayton Wallace
Second Assistant Vice President
Default Administration          ACKNOWLEDGMENT

State of  Colorado                §
                                  §
County of  Douglas County         §

The foregoing Instrument was acknowledged before me this  January 11, 2018  by
Clayton Wallace _____, SAVP _____ of SPECIALIZED LOAN
SERVICING LLC a DELAWARE corporation, on behalf of the corporation.

_____
Signature of Person Taking Acknowledgment

Vanessa Diane Valencia
Printed Name

CR Coordinator
Title or Rank

(Seal)

Serial Number, if any: _____

```
VANESSA DIANE VALENCIA
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20174001738
MY COMMISSION EXPIRES 01/12/2021
```

Modification Agreement
Proprietary W3078H                Page 8 of 9                90386FL 07/17

CFN: 20180063315 BOOK 30847 PAGE 779

**EXHIBIT A**

BORROWER(S): JORGE FERNANDEZ

LOAN NUMBER: ▇▇▇▇▇▇

LEGAL DESCRIPTION:

STATE OF FLORIDA, COUNTY OF MIAMI-DADE, AND DESCRIBED AS FOLLOWS:

LOT 4, BLOCK 8, KENDALL POINT FIRST ADDITION, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 77, PAGE 31, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Tax Parcel ID No.: 30-4034-014-0380

ALSO KNOWN AS: 8620 SW 85TH AVE, MIAMI, FL 33143

Modification Agreement
Proprietary W3078H



# Exhibit "C"

# to Plaintiff's Complaint

CFN 2012R0266406
OR Bk. 28073 Pgs 3975 - 3976 (2pgs)
RECORDED 04/16/2012 10:35:10
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

## CORPORATE ASSIGNMENT OF MORTGAGE

Miami-Dade, Florida
"FERNANDEZ"

Date of Assignment: March 28th, 2012
Assignor: NEW CENTURY MORTGAGE CORPORATION at 18400 VON KARMAN, SUITE 1000, IRVINE, CA 92612
Assignee: US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-NC2, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-NC2 at 4801 FREDERICA STREET, OWENSBORO, KY 42301
Executed By: JORGE FERNANDEZ AND CRISTINA FERNANDEZ, HUSBAND AND WIFE  To: NEW CENTURY MORTGAGE CORPORATION
Date of Mortgage: 08/21/2005  Recorded: 08/27/2005 in Book/Reel/Liber: 23813 Page/Folio: 3016 as Instrument No.: 2005R1011059  In the County of Miami-Dade, State of Florida.

-LOAN MODIFICATION AGREEMENT Dated: 08/04/2009 Recorded: 05/27/2010 in Book/Reel/Liber: 27209 Page/Folio: 1955 as Instrument No.: 2010R357210, between JORGE FERNANDEZ AND CRISTINA FERNANDEZ, HUSBAND AND WIFE and WELLS FARGO BANK, NA DBA AMERICA'S SERVICING COMPANY.  Loan Amount: $404,361.50

Property Address: 8620 SW 86TH AVENUE, MIAMI, FL 33143

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $380,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

    WELLS FARGO BANK, NA, AS ATTORNEY IN FACT FOR

NEW CENTURY MORTGAGE CORPORATION
On: 3-29-12

By: _____
Janet L. Jones
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Dakota

On 3-28-12, before me, Robert W. Caruso, a Notary Public in Dakota County in the State of Minnesota, personally appeared Janet L. Jones, Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Robert W. Caruso
Notary Expires: 1-31-14

ROBERT W. CARUSO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014

(This area for notarial seal)

OR BK 28073 PG 3976
LAST PAGE

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

Prepared By: Kang Yang, WELLS FARGO BANK, N.A. 2701 WELLS FARGO WAY, MAC X9999-010, MINNEAPOLIS, MN
55467-0000 1-800-214-0271

# Exhibit "D"

# to Plaintiff's Complaint



Specialized Loan
# Servicing

Part of the Computershare Group
P.O. Box 636005
Littleton, CO 80163-6005
1-800-315-4615 (4757)

Pg 1 of 2



+ 0915575 000003290 095FC2 0061424
JORGE FERNANDEZ
8620 SW 85TH AVE
MIAMI FL 33143-6930



October 14, 2018

Re: SLS Loan Number: 
Property Address:  8620 SW 85th Ave
Miami, FL 33143

### Notice of Default and Notice of Intent to Foreclose

Dear Jorge Fernandez,

The Note on the above-referenced loan is now in default as a result of your failure to pay the 04/01/18 payment and the payments due each month thereafter, as provided for in the Note. Pay $22,949.86 within 33 days of the date of this letter, and the default will be cured. If any other amounts come due after the date of this letter, however, you still owe those amounts.

This notice does not affect your ability to apply for or be evaluated for a foreclosure prevention option or any pending loss mitigation option that may have been extended.



Failure to cure the default of your Deed of Trust/Mortgage by 11/16/18 may result in acceleration of the entire balance outstanding under the Note including, but not limited to, the principal, interest and all other outstanding charges and costs, and commencement of foreclosure by judicial proceeding of the Trust Deed/Mortgage which is security for your Note, and sale of the property. Please be advised that any extension of time or forbearance in the exercising of any right or remedy as provided for in the Deed of Trust/Mortgage shall not constitute a waiver of or preclude the exercising of any right or remedy.

You have the right to reinstate the Note after acceleration as provided by the Deed of Trust/Mortgage and applicable law and you have the right to assert, in the judicial foreclosure proceeding, the nonexistence of default or any other defense you have to acceleration, foreclosure, and sale.

If your loan is not brought current, inspections of your property will be made and you will be assessed fees for that purpose as permitted under state law. Additionally, if your property is found to be vacant and unsecured, the mortgage holder will have it secured and will charge you for the cost of securing. You may also be liable for reasonable attorney fees and costs incurred in connection with any proceedings on the Note and Deed of Trust and such other costs as may be allowed by law. In addition, you may be liable for any deficiency that may be established as a result of the foreclosure action unless precluded by a bankruptcy discharge.

10/14/18 ████████████   0915575 000003290 09SFC2 0061424          Pg 2 of 2

In accordance with the Fair Debt Collection Practices Act, you are hereby given notice of the following:

1.  Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires Specialized Loan Servicing LLC ("SLS") to provide you with the amount of the debt. As of 10/14/18, the amount of the unpaid principal balance is $511,213.35. This notice is in no way intended as a payoff statement and you must not rely upon this notice for purposes of paying off your mortgage.

2.  SLS is the current servicer for the current owner of the loan U.S. Bank National Association, as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-NC2, Mortgage Pass-Through Certificates, Series 2006-NC2. If you request, in writing within 30 days after you receive this notice, we will provide you with the name and address of the original owner if different than the current owner.

3.  Unless within 30 days after you receive this notice you dispute the validity of the debt or a portion thereof, the debt will be assumed to be valid. If you notify us in writing within 30 days after you receive this notice that you dispute the debt or a portion thereof, we will obtain and mail you verification of the debt.

4.  **THIS COMMUNICATION IS FROM A DEBT COLLECTOR. PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, PLEASE BE ADVISED THAT THIS LETTER CONSTITUTES NEITHER A DEMAND FOR PAYMENT OF THE CAPTIONED DEBT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE.**

If you believe you are entitled to the benefits as outlined in the Servicemembers Civil Relief Act, you should promptly provide us with evidence of your active duty status.

In accordance with federal law and 12 U.S.C.1701 x (c) (5) SLS does not offer home ownership counseling services to borrowers. As such, counseling is available through a variety of non-profit organizations which can be reached by contacting the Secretary of Housing and Urban Development "HUD" by calling the toll free number 1-800-569-4287 to obtain a list of non-profit organizations and HUD provided counseling agencies serving your area.

It is the practice and policy of SLS to work with customers that have experienced a hardship. We have many alternative programs available to assist customers in avoiding a foreclosure. Please visit our website at www.sls.net for options or contact Customer Assistance at 1-800-306-6062 where one of our experienced and skilled agents may assist you. Do not delay. There is help available for most customers.

If you have any questions regarding this notice, please contact Customer Assistance at 1-800-306-6062 Monday through Friday, from 6:00 a.m. to 9:00 p.m. (MT), Saturday, 6:00 a.m. until 12:00 p.m. (MT), or TDD number 1-800-268-9419 Monday through Friday, from 8:00 a.m. until 5:00 p.m. (MT).

SLS requests that all payments be made in certified funds, (cashier's check or money order(s)) payable to Specialized Loan Servicing LLC and mailed to: Attention: Customer Assistance Department to one of the below addresses (always include Loan Number with your payment):

| VIA Regular Mail | VIA Over Night Address | VIA Western Union Quick Collect |
|---|---|---|
| Specialized Loan Servicing LLC | Specialized Loan Servicing LLC | Code City: PAYSLS |
| PO Box 60535 | 8742 Lucent Blvd, Suite 300 | Code State: CO |
| City of Industry, CA 91716-0535 | Highlands Ranch, CO 80129 | Reference: Loan Number |

The matters discussed herein are of extreme importance. We trust that you will give them appropriate attention. SLS has sent this notice to you by first class mail and certified mail.

SPECIALIZED LOAN SERVICING LLC
Customer Assistance Department

8742 Lucent Blvd., Suite 300, Highlands Ranch, Colorado 80129, (Ph (800) 306-6062

# Exhibit "E"

# to Plaintiff's Complaint

10194

Form 668 (Y)(c)
(Rev. February 2004)

**Department of the Treasury - Internal Revenue Service**

## Notice of Federal Tax Lien

| Area: WAGE & INVESTMENT AREA #2 Lien Unit Phone: (800) 829-7650 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

CFN  2012R0873912
OR Bk 28386 Pg 2634 (1ps)
12/05/2012 15:26:44
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer JORGE C FERNANDEZ

Residence      19597 NW 55TH CIRCLE PL
MIAMI GARDENS, FL 33055-6184 .

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| CIVP | 09/30/2006 | | 04/05/2010 | 05/05/2020 | 3371.07 |
| CIVP | 03/31/2007 | | 04/05/2010 | 05/05/2020 | 5737.50 |
| CIVP | 06/30/2007 | | 04/05/2010 | 05/05/2020 | 5978.78 |
| CIVP | 12/31/2007 | | 04/05/2010 | 05/05/2020 | 5794.31 |
| CIVP | 03/31/2008 | | 04/05/2010 | 05/05/2020 | 4633.15 |
| CIVP | 06/30/2008 | | 04/05/2010 | 05/05/2020 | 3898.76 |

| Place of Filing | | |
|---|---|---|
| County Courthouse Dade County Miami, FL 33130 | Total $ | 29413.57 |

This notice was prepared and signed at    BALTIMORE, MD               , on this,

the   20th   day of   November   2012

| Signature for DEBRA K. HURST | Title ACS W&I (800) 829-7650 | 13-00-0000 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

Book28386/Page2634    CFN#20120873912     Page 1 of 1

| | | | | | |
|---|---|---|---|---|---|
| Form 668 (Y)(c) | 10194 | Department of the Treasury - Internal Revenue Service | | | |
| (Rev. February 2004) | | **Notice of Federal Tax Lien** | | | |

| Area: | Serial Number | For Optional Use by Recording Office |
|---|---|---|
| SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 829-3903 | | CFN 2014R0759388 OR Bk 29375 Pg 0281 (1ps) 11/03/2014 12:53:47 HARVEY RUVIN, CLERK OF COURT MIAMI-DADE COUNTY, FLORIDA LAST PAGE |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer JORGE ADALBERTO FERNANDEZ

Residence       1418 NW 103RD ST
                MIAMI, FL 33147-1430

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | | 06/08/2009 | 07/08/2019 | 159.59 |
| 1040 | 12/31/2008 | | 05/30/2011 | 06/29/2021 | 153770.29 |

| Place of Filing | | |
|---|---|---|
| County Courthouse Dade County Miami, FL 33130 | Total $ | 153929.88 |

This notice was prepared and signed at       BALTIMORE, MD                              , on this,

the       24th       day of   October       2014

| Signature | Title |
|---|---|
| for P.A. BELTON | ACS SBSE                23-00-0008 (800) 829-3903 |

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004) CAT. NO 60025X

Book29375/Page281   CFN#20140759388   Page 1 of 1

11953

Form 668 (Y)(c)
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

CFN 2016R0530956
OR Bk 30226 Pg 13277 (1 pg)
09/12/2016 11:26:05
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Name of Taxpayer   JORGE LUIS FERNANDEZ

Residence      8620 SW 85TH AVE
               MIAMI, FL 33143-6930

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1120 | 12/31/2014 | | 11/16/2015 | 12/16/2025 | 33336.39 |

| Place of Filing | | | |
|---|---|---|---|
| County Courthouse<br>Dade County<br>Miami, FL 33130 | | Total $ | 33336.39 |

This notice was prepared and signed at      BALTIMORE, MD      , on this,

the   25th   day of   August   2016.

| Signature<br><br>for P.A. BELTON | Title<br>ACS SBSE<br>(800) 829-3903 | 23-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409).

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

16600

Form 668 (Y)(c)
(Rev. February 2004)

**Department of the Treasury - Internal Revenue Service**

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

CFN 2016R0673965
OR Bk 30317 Ps 3890; (1 ps)
11/22/2016 14:07:18
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Name of Taxpayer JORGE FERNANDEZ

Residence        8005 NW 8TH ST APT B425
                 MIAMI, FL 33126-2980

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a)

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2012 | | 09/07/2015 | 10/07/2025 | 100406.83 |

| Place of Filing | County Courthouse Dade County Miami, FL 33130 | Total | $ 100406.83 |
|---|---|---|---|

This notice was prepared and signed at          BALTIMORE, MD                    on this,

the   27th   day of   October   2016

| Signature     Cheryl Corder
for P.A. BELTON | Title ACS SBSE        (800) 829-3903 | 23-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71 466, 1971  2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

| Form 668 (Y)(c)<br>(Rev. February 2004) | 16999 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |
|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

CFN 2018R0542493
OR Bk 31129 Pg 2522; (1 pg)
09/07/2013 08:43:31
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Name of Taxpayer JORGE FERNANDEZ

Residence        8335 NW 197TH TER
                 HIALEAH, FL 33015-5950

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2011 | | 06/19/2017 | 07/19/2027 | 11574.79 |
| 1040 | 12/31/2012 | | 06/19/2017 | 07/19/2027 | 11831.70 |
| 1040 | 12/31/2013 | | 06/19/2017 | 07/19/2027 | 10015.40 |

| Place of Filing | | |
|---|---|---|
| County Courthouse<br>Dade County<br>Miami, FL 33130 | Total $ | 33421.89 |

This notice was prepared and signed at     BALTIMORE, MD     , on this,

the __16th__ day of __August__ __2018__.

| Signature   _Joan Flach_<br>for S. McGUIGAN | Title<br>ACS SBSE<br>(800) 829-3903 | 23-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

Page 1 of 1

Form 668 (Y)(c)
(Rev. February 2004)

16999

Department of the Treasury · Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #5 Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

CFN 2019R0278800
OR Bk 31430 Pg 4625; (1 pg)
05/03/2019 19:12:55
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer   JORGE FERNANDEZ

Residence   1337 SW 14 ST APT A
MIAMI, FL 33145-1645

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2002 | | 05/07/2012 | 06/06/2022 | 82072.69 |
| 1040 | 12/31/2007 | | 05/07/2012 | 06/06/2022 | 51168.26 |
| 1040 | 12/31/2008 | | 05/07/2012 | 06/06/2022 | 31785.41 |

| Place of Filing | | |
|---|---|---|
| County Courthouse Dade County Miami, FL 33130 | Total $ | 165026.36 |

This notice was prepared and signed at   BALTIMORE, MD   , on this,

the   19th   day of   April   ,   2019   .

| Signature   *Joan Flack* for S. MCGUIGAN | Title   ACS SBSE   (800) 829-3903 | 23-00-0008 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

| Form 668 (Y)(c) (Rev. February 2004) | 16999 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | | |
|---|---|---|---|---|
| **Area:**<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 829-3903 | | **Serial Number** | **For Optional Use by Recording Office** | |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

CFN 2019R0479974
OR Bk 31549 Pg 29561 (1 pg)
07/31/2019 10:41:59
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Name of Taxpayer JORGE L FERNANDEZ

Residence      5516 NW 199TH TERRACE LOT 90
MIAMI GARDENS, FL 33055-4613

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period Ending<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2017 | | 06/04/2018 | 07/04/2028 | 5502.09 |
| 1040 | 12/31/2018 | | 06/03/2019 | 07/03/2029 | 9104.86 |

| Place of Filing | County Courthouse<br>Dade County<br>Miami, FL 33130 | Total | $ | 14606.95 |
|---|---|---|---|---|

This notice was prepared and signed at    BALTIMORE, MD    , on this,

the   18th   day of   July    2019 .

| Signature<br>for S. MCGUIGAN | Title<br>ACS SBSE<br>(800) 829-3903 | 23-00-0008 |
|---|---|---|

NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409.

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

3351

**Form 668 (Y)(c)**
(Rev. February 2004)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

CFN 2010R0438099
OR Bk 27336 Pg 3332 (1ps)
06/30/2010 09:08:01
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

Name of Taxpayer JORGE FERNANDEZ

Residence    1337 SW 14 ST APT A
             MIAMI, FL 33145-1645

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2003 | | 09/15/2008 | 10/15/2018 | 30853.57 |
| 1040 | 12/31/2004 | | 09/15/2008 | 10/15/2018 | 40692.87 |
| 1040 | 12/31/2005 | | 11/10/2008 | 12/10/2018 | 48413.14 |
| 1040 | 12/31/2006 | | 11/10/2008 | 12/10/2018 | 33255.28 |

| Place of Filing | County Courthouse Dade County Miami, FL 33130 | Total $ | 153214.86 |
|---|---|---|---|

This notice was prepared and signed at    BALTIMORE, MD    , on this,

the ___18th___ day of ___June___, ___2010___.

| Signature   R. A. Mitchell for THERESA HARLEY | Title ACS (800) 829-3903 | 23-00-0008 |
|---|---|---|

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien Rev. Rul. 71-466, 1971 - 2 C.B. 409).

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 00026X

| Form 668 (Y)(c)<br>(Rev. February 2004) | 3351 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** | |
|---|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

CFN 2013R0866347
OR Bk 28891 Pg 4093 (1pg)
10/31/2013 09:21:54
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer GEROGE FERNANDEZ & SANDRA OSORIO

Residence       14100 SW 182ND AVE
                MIAMI, FL 33196-2256

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | | 03/29/2010 | 04/28/2020 | 27833.25 |
| 1040 | 12/31/2007 | | 10/19/2009 | 11/18/2019 | 62954.45 |
| 1040 | 12/31/2008 | | 11/16/2009 | 12/16/2019 | 28735.20 |
| 1040 | 12/31/2009 | | 11/15/2010 | 12/15/2020 | 10392.21 |

| Place of Filing | County Courthouse<br>Dade County<br>Miami, FL 33130 | Total | $ | 129915.11 |
|---|---|---|---|---|

This notice was prepared and signed at       BALTIMORE, MD                    , on this,

the    03rd    day of   October   , 2013 .

| Signature | Title<br>ACS SBSE   (800) 829-3903 | |
|---|---|---|
| for P.A. BELTON | | 23-00-0008 |

**(NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax Lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

# Exhibit "F"

# to Plaintiff's Complaint

Document drafted by and
RECORDING REQUESTED BY:
Specialized Loan Servicing LLC
8742 Lucent Blvd.
Highlands Ranch, CO 80129

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

**The trusts identified on the attached Schedule A (the "Trusts"),** by and through **U.S. Bank National Association,** a national banking association organized and existing under the laws of the United States and having an office at One Federal Street, EX-MA-FED, Boston, MA  02110, not in its individual capacity but solely as trustee or indenture trustee (in such capacities, "Trustee"), hereby constitutes and appoints Specialized Loan Servicing, LLC ("Servicer"), having an office at 8742 Lucent Boulevard, Highlands Ranch, Colorado 80129 and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing or other applicable governing agreements ("Governing Agreements"), (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as applicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity.  This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee.  These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby.  Please refer to **Schedule A** attached hereto.

1.  Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements, short sale transactions and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed or other security instrument to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10. Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of

the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the Governing Agreements.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

In addition to all preexisting indemnification obligations, including without limitation pursuant to (a) the applicable Governing Agreements for the Trusts and (b) that certain letter agreement captioned "Transfer and Assignment of Servicing Rights by Wells Fargo Bank, N.A. to Specialized Loan Servicing LLC" effective as of December 1, 2018 among Servicer, Wells Fargo Bank, N.A., and U.S. Bank National Association, Servicer hereby agrees to indemnify and hold the Trustee, in its individual capacity or as Trustee, as the case may be, and its employees, officers, directors, affiliates, agents, successors and assigns (the "Indemnified Parties") harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related Governing Agreements or the earlier resignation or removal of the Trustee or the Servicer with respect to the Trusts.

**Witness** my hand and seal this 1st day of December, 2018.

**NO CORPORATE SEAL**

On Behalf of the Trusts, by
U.S. Bank National Association, as Trustee

Witness: Matthew Abrams

By: _____
Amy B. Byrnes, Senior Vice President

Witness: Maryellen Hunter

By: _____
Michael James, Vice President

Attest: Kevin Blanchard, Trust Officer

## CORPORATE ACKNOWLEDGMENT

Commonwealth of Massachusetts

County of Suffolk

On this 1st day of December, 2018, before me, the undersigned, a Notary Public in and for said County and Commonwealth, personally appeared Amy B. Byrnes, Michael James and Kevin Blanchard, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Senior Vice President, Vice President, and Trust Officer, respectively of U.S. Bank National Association, a national banking association, and acknowledged to me that such national banking association executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____

             Paul J. Gobin

My commission expires: 7/16/2021



**SCHEDULE A**

84: U.S. Bank National Association, Trustee of the Oseberg Trust IV

94: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-18ALT, Asset-Backed Certificates, Series 2005-18ALT

95: U.S. Bank National Association, as Trustee, on behalf of the holders of Terwin Mortgage Trust 2006-3, Asset-Backed Certificates Series 2006-3

96: U.S. Bank National Association, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-5, Asset-Backed Certificates, TMTS Series 2006-5

97: U.S. Bank National Association, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-7, Asset-Backed Certificates, TMTS Series 2006-7

100 and 102: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-1HE, Asset-Backed Certificates, Series 2004-1HE

101: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-2SL, Asset-Backed Certificates, Series 2004-2SL

103: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-4SL, Asset-Backed Certificates, Series 2004-4SL

104: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-3HE, Asset-Backed Certificates, Series 2004-3HE

105: U.S Bank National Association, as Trustee for Terwin Mortgage Trust 2004-7HE, Asset-Backed Certificates, Series 2004-7HE

106: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-8HES, Asset-Backed Certificates, Series 2004-8HES

107: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-5HE, Asset-Backed Certificates, Series 2004-5HE

108: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-6SL, Asset-Backed Certificates, Series 2004-6SL

109: U.S Bank National Association, as Trustee for Terwin Mortgage Trust 2004-9HE, Asset-Backed Certificates, Series 2004-9HE

110: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-10SL, Asset-Backed Certificates, Series 2004-10SL

111: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-11HE, Asset-Backed Certificates, Series 2004-11H
112: U.S Bank National Association, as Trustee for Terwin Mortgage Trust 2004-19HE, Asset-Backed Certificates, Series 2004-19HE

113: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-16SL, Asset-Backed Certificates, TMTS Series 2004-16SL

114: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-18SL, Asset-Backed Certificates, TMTS Series 2004-18SL

115: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-21HE, Asset-Backed Certificates, Series 2004-21HE

116: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2004-22SL, Asset-Backed Certificates, Series 2004-22SL

117: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-2HE, Asset-Backed Certificates, Series 2005-2HE

118: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-1SL, Asset-Backed Certificates, Series 2005-1SL

119: U.S Bank National Association, as Trustee for Terwin Mortgage Trust 2005-4HE, Asset-Backed Certificates, Series 2005-4HE

120: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-3SL, Asset-Backed Certificates, TMTS Series 2005-3SL

121: U.S. Bank National Association, a national banking association, not in its individual capacity, but solely in its capacity as trustee for the Terwin Mortgage Trust, Series TMTS 2005-6HE

122: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-5SL, Asset-Backed Certificates, Series 2005-5SL

123: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-8HE, Asset-Backed Certificates, Series 2005-8HE

124: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-7SL, Asset-Backed Certificates, Series 2005-7SL

125: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-10HE, Asset-Backed Certificates, Series 2005-10HE

126: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-12ALT, Asset-Backed Certificates, Series 2005-12ALT

129: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-14HE, Asset-Backed Certificates, Series 2005-14HE

130: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-16HE, Asset-Backed Certificates, Series 2005-16HE

131 and 132: U.S. Bank, National Association, as Indenture Trustee on behalf of the holders of the Terwin Mortgage Trust 2005-11, Asset-Backed Securities, TMTS Series 2005-11

133: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-14HE, Asset-Backed Certificates, Series 2005-14HE

134: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-16HE, Asset-Backed Certificates, Series 2005-16HE

135: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-12ALT, Asset-Backed Certificates, Series 2005-12ALT

138: U.S. Bank National Association, as Trustee for Terwin Mortgage Trust 2005-18ALT, Asset-Backed Certificates, Series 2005-18ALT

139 and 140: U.S. Bank National Association, as Indenture Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-1, Asset-Backed Securities, TMTS Series 2006-1

145: U.S. Bank National Association, as Trustee, on behalf of the holders of Terwin Mortgage Trust 2006-3, Asset-Backed Certificates Series 2006-3

148: U.S. Bank National Association, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-5, Asset-Backed Certificates, TMTS Series 2006-5

151: U.S. Bank National Association, as Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-7, Asset-Backed Certificates, TMTS Series 2006-7

164 and 165: U.S. Bank National Association, as Trustee, successor in interest to Bank of America, N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for the Bayview Asset Backed Securities Series 2007-1

182 and 183: U.S. Bank National Association, as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-QHL1, Asset-Backed Securities, Series 2007-QHL1

184 and 185: U. S. Bank National Association, as Indenture Trustee, on behalf of the holders of the Terwin Mortgage Trust 2007-9SL, Asset-Backed Securities, Series 2007-9SL

186 and 187: U.S. Bank National Association, as Trustee for the holders of the Terwin Micro Asset-Backed Securities, Series 2007-SF1

192: U.S. Bank National Association, Indenture Trustee, of Terwin Mortgage Trust 2004-23 HELOC

193: U.S. Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan Trust 2004 HE4

195: U.S. Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan Trust 2005-HE3

200 and 201: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-1

202 and 203: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-2

204 and 205: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-3

206 and 207: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2006-4

208 and 209: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-1

210 and 211: U.S. Bank National Association, as Trustee relating to Chevy Chase Funding LLC Mortgage Backed Certificates Series 2007-2

217: U.S. Bank National Association as Indenture Trustee of the GMACM Home Equity Loan Trust 2004- HE3

222 and 223: U.S. Bank National Association, not in its individual capacity but solely as Trustee for the RMAC Trust, Series 2013-2T

227-228: GMAT Legal Title Trust 2013-1, U.S. Bank National Association, as Legal Title Trustee

229: NRZ Pass-Through Trust I, U.S. Bank National Association, as Trustee

231: Adjustable Rate Mortgage Trust 2004-3, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-3, U.S. Bank National Association, as Trustee

236: GSR Mortgage Loan Trust 2005-4F, Mortgage Pass-Through Certificates, Series 2005-4F, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

256: Lehman XS Trust Mortgage Pass-Through Certificates, Series 2005-7N, U.S. Bank National Association, as Trustee

257: MASTR Asset Backed Securities Trust 2005-AB1, Mortgage Pass-Through Certificates, Series 2005-AB1, U.S. Bank National Association, as Trustee

274: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-1, U.S. Bank National Association, as Trustee

275: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-1, U.S. Bank National Association, as Trustee

276: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-2, U.S. Bank National Association, as Trustee

277: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-2, U.S. Bank National Association, as Trustee

278: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-3, U.S. Bank National Association, as Trustee

279: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-3, U.S. Bank National Association, as Trustee

280: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

281: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

282: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-B, U.S. Bank National Association, as Trustee

283: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-B, U.S. Bank National Association, as Trustee

284: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-C, U.S. Bank National Association, as Trustee

285: Chevy Chase Funding LLC, Mortgage-Backed Certificates, Series 2005-C, U.S. Bank National Association, as Trustee

288: Asset Backed Securities Corporation Home Equity Loan Trust 2002-HE3, Asset Backed Pass-Through Certificates, Series 2002-HE3, U.S. Bank National Association, as Trustee

289: Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through Certificates Series 2005-HE3, U.S. Bank National Association, as Trustee

303 and 304: U.S. Bank National Association, as Trustee, relating to Home Equity Mortgage Trust Series 2007-2, Home Equity Mortgage Pass-Through Certificates, Series 2007-2

307: U.S. Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan Trust 2006- HE4

308: U.S. Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan Trust 2007- HE1

309: Residential Funding Mortgage Securities II, Inc. Home Equity Loan Pass-Through Certificates, Series 2007-HSA2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

310: U.S. Bank National Association, Indenture Trustee, Home Equity Loan Trust 2007-HSA3

322 and 323: Morgan Stanley Mortgage Loan Trust 2007-9SL, Mortgage Pass-Through Certificates, Series 2007-9SL, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

359 and 360: Pooling and Servicing Agreement dated November 1, 2004 by and among Structured Asset Mortgage Investments II Inc. (Depositor), U.S. Bank National Association (Trustee), Wells Fargo Bank, N.A. (Master Servicer), and EMC Mortgage Corporation (Seller) for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2004-10

361: Pooling and Servicing Agreement dated May 1, 2004 among Structured Asset Mortgage Investments II Inc. (Depositor), U.S. Bank National Association (Trustee), Wells Fargo Bank, N.A. (Master Servicer), and EMC Mortgage Corporation (Seller) related to Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2004-3.

362-363: Pooling and Servicing Agreement dated June 1, 2005 among Structured Asset Mortgage Investments II Inc. (Depositor), U.S. Bank National Association (Trustee), Wells Fargo Bank, N.A. (Master Servicer), and EMC Mortgage Corporation (Seller) for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-4.

364-365: Pooling and Servicing Agreement dated July 29, 2005 among Structured Asset Mortgage Investments II Inc. (Depositor), Bear Stearns ARM Trust 2005-7 (Issuer), U.S. Bank National Association (Indenture Trustee), Wells Fargo Bank, N.A. (Master Servicer), and EMC Mortgage Corporation (Seller) for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-7

366-367: Pooling and Servicing Agreement dated May 1, 2006 among Structured Asset Mortgage Investments II Inc. (Depositor), U.S. Bank National Association (Trustee), Wells Fargo Bank, N.A. (Master Servicer) and EMC Mortgage Corporation (Seller) for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2006-2

373: CSAB Mortgage-Backed Pass-Through Certificates, Series 2007-1, U.S. Bank National Association, as Trustee

374: CSMC Mortgage-Backed Pass-Through Certificates, Series 2007-3, U.S. Bank National Association, as Trustee

381: J.P. Morgan Alternative Loan Trust 2006-S3, Mortgage Pass-Through Certificates, U.S. Bank National Association, as Trustee

382: J.P. Morgan Alternative Loan Trust 2006-S4, Mortgage Pass-Through Certificates, U.S. Bank National Association, as Trustee

383: J.P. Morgan Mortgage Loan Trust 2006-S3, Mortgage Pass-Through Certificates, U.S. Bank National Association, as Trustee

401: Morgan Stanley Mortgage Loan Trust 2006-17XS, Mortgage Pass-Through Certificates, Series 2006-17XS, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

406: U.S. Bank National Association, as Trustee, successor in interest to Bank of America N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-15AR, Mortgage Pass-Through Certificates, Series 2007-15AR

416: First Franklin Mortgage Loan Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-FFC, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

447: U.S. Bank Trust, N.A. as Trustee for Cascade Funding Mortgage Trust 2017-1

475 & 476: Legacy Mortgage Asset Trust 2018-SL1 by U.S. Bank Trust National Association, not in its individual capacity, but solely as Trustee

608: U.S. Bank National Association, as Indenture Trustee of the GMACM Home Equity Loan Trust 2007- HE1

609: Residential Funding Mortgage Securities II, Inc. Home Equity Loan Pass-Through Certificates, Series 2007-HSA2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America N.A., as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

610: U.S. Bank National Association, Indenture Trustee, Home Equity Loan Trust 2007-HSA3

639: U.S. Bank National Association, as Indenture Trustee on behalf of the holders of the Terwin Mortgage Trust 2006-1, Asset-Backed Securities, TMTS Series 2006-1

824: U.S. Bank National Association, successor indenture trustee to Bank of America, N.A., successor by merger to LaSalle Bank National Association, as Indenture Trustee for Home Equity Loan Trust 2007-HSA1

1400 FC: U.S. Bank National Association, as Trustee on behalf of CVF Vault Mortgage Loan Acquisition Company

1556 FC: GRA Legal Title Trust 2013-1, by U.S. Bank National Association, as Legal Title Trustee

1850: NQM CFC Trust, U.S. Bank National Association, not in its individual capacity but solely as Trustee

1852: NQM CFC Trust, U.S. Bank National Association, not in its individual capacity but solely as Trustee

1853: NQM CFC Trust, U.S. Bank National Association, not in its individual capacity but solely as Trustee

1898: U.S. Bank Trust National Association, as Trustee for Waterfall Victoria Grantor Trust II, Series G

1950: U.S. Bank National Association, as trustee of the NRZ Pass-Through Trust V

1983: U.S. Bank National Association, as trustee of the NRZ Pass-Through Trust V

2215: MAT ITT

2525 TOWD POINT MASTER FUNDING

2526 TOWD POINT MSTERFUND TRST 2017-PM13

2531 TPMFT 2018-HE1

3500: U.S. Bank National Association, as Trustee for the Banc of America Funding Corporation 2006-7

3501: U.S. Bank National Association, as Trustee for the Banc of America Funding Corporation 2006-8T2

3502:  U.S. Bank National Association, as Trustee for Banc of America Funding Corporation, Mortgage Pass-Through Certificates Series 2007-8

3504:  Bear Stearns ALT-A Trust 2006-3, Mortgage Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

3505: U.S. Bank National Association, as Trustee for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-3

3506: U.S. Bank National Association, as Indenture Trustee for Bear Stearns ARM Trust 2005-7, Mortgage-Backed Notes

3507: U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2005-9F

3508: U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2005-AR3

3509: U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2006-1F

3510: U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2006-2F

3511:  U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2006-3F, Mortgage Pass-Through Certificates, Series 2006-3F

3528:  U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-11

3529:  U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-12XS

3530:  U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2006-15XS

3531:  U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Morgan Stanley Mortgage Loan Trust 2007-8XS

3533: U.S. Bank National Association, as Trustee for Prime Mortgage Trust 2003-2, Mortgage Pass-Through Certificates, Series 2003-2

3534: U.S. Bank National Association, as Trustee for Prime Mortgage Trust 2003-3, Mortgage Pass-Through Certificates, Series 2003-3

3536:  U.S. Bank National Association, as Trustee for Structured Asset Mortgage Investments II Inc., Prime Mortgage Trust, Certificates Series 2005-5

3537: U.S. Bank National Association, as Trustee for Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2006-CL1

3538: U.S. Bank National Association, as Trustee for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2004-12

3539: U.S. Bank National Association, as Trustee for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-1

3540: U.S. Bank National Association, as Trustee for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-4

3541: U.S. Bank National Association, as Trustee for Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-6

3542:  U.S. Bank National Association, as Trustee for Bear Stearns Asset Backed Securities I Trust 2006-IM1, Asset-Backed Certificates. Series 2006-IM1

3602: Deutsche ALT-A Securities Mortgage Loan Trust, Series 2007-2 Mortgage Pass Through Certificates Series 2007-2, U.S. Bank National Association, as Trustee

3603:  Deutsche ALT-A Securities Mortgage Loan Trust, Series 2007-2 Mortgage Pass Through Certificates Series 2007-2, U.S. Bank National Association, as Trustee

3606:  MortgageIT Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2006-1, U.S. Bank National Association, as Trustee, successor in interest to Deutsche Bank National Trust Company, as Trustee

3607:  MortgageIT Trust 2005-AR1, Mortgage Pass-Through Certificates, Series 2005-AR1, U.S. Bank National Association, as Trustee, successor in interest to Deutsche Bank National Trust Company, as Trustee

3620:  Banc of America Funding Corporation 2007-1, U.S. Bank National Association, as Trustee

3621:  Banc of America Funding Corporation 2007-2,  U.S. Bank National Association, as Trustee

3622:  Banc of America Funding Corporation 2007-3, U.S. Bank National Association, as Trustee

3623:  Banc of America Funding Corporation 2007-4, U.S. Bank National Association, as Trustee

3624:  Banc of America Funding Corporation 2007-7, U.S. Bank National Association, as Trustee

3625:  Banc of America Funding Corporation 2007-C, U.S. Bank National Association, as Trustee

3626:  Banc of America Funding Corporation 2008-1, U.S. Bank National Association, as Trustee

3633:  Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-6, U.S. Bank National Association, as Trustee

3634:  Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-10, U.S. Bank National Association, as Trustee

3635:  Citigroup Mortgage Loan Trust Inc. 2007-AR7, Mortgage Pass-Through Certificates, Series 2007-AR7, U.S. Bank National Association, as Trustee

3636:  Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-2 Mortgage Pass-Through Certificates, U.S. Bank National Association, as Trustee

3638:  GSR Mortgage Loan Trust 2005-AR5, U.S. Bank National Association, as Trustee

3641:  MASTR Asset Backed Securities Trust 2005-AB1, Mortgage Pass-Through Certificates, Series 2005-AB1, U.S. Bank National Association, as Trustee

3642:  MASTR Asset Backed Securities Trust 2006-AB1, Mortgage Pass-Through Certificates, Series 2006-AB1, U.S. Bank National Association, as Trustee

3643:  MASTR Alternative Loan Trust 2005-6, U.S. Bank National Association, as Trustee

3644:  MASTR Alternative Loan Trust 2007-1, U.S. Bank National Association, as Trustee

3652:  Morgan Stanley Mortgage Loan Trust 2006-1AR, U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3653:  Morgan Stanley Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3654:  Morgan Stanley Mortgage Loan Trust 2006-3AR, Mortgage Pass-Through Certificates, Series 2006-3AR, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3655:  Morgan Stanley Mortgage Loan Trust 2006-5AR, Mortgage Pass-Through Certificates, Series 2006-5AR,  U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3656:  Morgan Stanley Mortgage Loan Trust 2006-6AR, Mortgage Pass-Through Certificates, Series 2006-6AR, U.S. Bank National Association, as trustee successor in interest to Bank of America, National Association, as trustee, successor by merger to LaSalle Bank National Association, as Trustee

3657:  Morgan Stanley Mortgage Loan Trust 2006-7, U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3658:  Morgan Stanley Mortgage Loan Trust 2006-8AR, Mortgage Pass-Through Certificates, Series 2006-8AR, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3659:  Morgan Stanley Mortgage Loan Trust 2006-9AR, Mortgage Pass-Through Certificates, Series 2006-9AR, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3660:  Morgan Stanley Mortgage Loan Trust 2006-13ARX, Mortgage Pass-Through Certificates, Series 2006-13ARX, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3661:  Morgan Stanley Mortgage Loan Trust 2006-17XS, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3662:  Morgan Stanley Mortgage Loan Trust 2007-1XS, U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3663:  Morgan Stanley Mortgage Loan Trust 2007-2AX, U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3664:  Morgan Stanley Mortgage Loan Trust 2007-3XS, U.S. Bank National Association, as Trustee, successor in interest to Bank of America,  National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3665:  Morgan Stanley Mortgage Loan Trust 2007-7AX, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3669: Prime Mortgage Trust 2004-1, Mortgage Pass-Through Certificates, Series 2004-1, U.S. Bank National Association, as Trustee

3670:  Structured Asset Mortgage Investments II Inc., Prime Mortgage Trust, Certificates Series 2005-2, U.S. Bank National Association, as Trustee

3671:  Structured Asset Mortgage Investments II Inc., Prime Mortgage Trust, Certificates Series 2005-4, U.S. Bank National Association, as Trustee

3672:  Structured Asset Mortgage Investments II Inc., Prime Mortgage Trust, Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

3673: Wachovia Mortgage Loan Trust, Asset-Backed Certificates, Series 2006-ALT1, U.S. Bank National Association, as Trustee

3674: Wachovia Mortgage Loan Trust, Asset-Backed Certificates, Series 2006-AMN1, U.S. Bank National Association, as Trustee

3675:  Structured Asset Mortgage Investments II Inc., Prime Mortgage Trust, Certificates Series 2005-2, U.S. Bank National Association, as Trustee

3676:  Structured Asset Mortgage Investments II Inc., Prime Mortgage Trust, Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

3677:  Morgan Stanley Mortgage Loan Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

3680:  Securitized Asset Backed Receivables LLC Trust 2006-NC1, Mortgage Pass-Through Certificates, Series 2006-NC1, U.S. Bank National Association, as Trustee

3690:  Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-4, Home Equity Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

3697:  Banc of America Funding Corporation 2007-6, U.S. Bank National Association, as Trustee

3698:  Banc of America Funding Corporation 2006-5, U.S. Bank National Association, as Trustee

3749:  U.S. Bank National Association, as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-NC2, Mortgage Pass-Through Certificates, Series 2006-NC2

3750:  U.S. Bank National Association, as Trustee for Securitized Asset Backed Receivables LLC Trust 2006-WM1, Mortgage Pass-Through Certificates, Series 2006-WM1

3756:  GSAA Home Equity Trust 2005-11, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

3758:  GSAA Home Equity Trust 2005-14, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

3761:  GSAA Home Equity Trust 2006-1, Asset-Backed Certificates Series 2006-1, U.S. Bank National Association, as Trustee

3762:  GSAA Home Equity Trust 2006-3, Asset-Backed Certificates Series 2006-3, U.S. Bank National Association, as Trustee

3765:  GSAA Home Equity Trust 2006-5, Asset-Backed Certificates Series 2006-5, U.S. Bank National Association, as Trustee

3766:  GSAA Home Equity Trust 2006-6, Asset-Backed Certificates Series 2006-6, U.S. Bank National Association, as Trustee

3768:  Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-5, Home Equity Pass-Through Certificates, Series 2006-5, U.S. Bank National Association, as Trustee

3769:  Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-6, Home Equity Pass-Through Certificates, Series 2006-6, U.S. Bank National Association, as Trustee

3770:  Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-7, Home Equity Pass-Through Certificates, Series 2006-7, U.S. Bank National Association, as Trustee

3771:  Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-8, Home Equity Pass-Through Certificates, Series 2006-8, U.S. Bank National Association, as Trustee

3772:  Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2007-1, Home Equity Pass-Through Certificates, Series 2007-1, U.S. Bank National Association, as Trustee

3788:  Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-10, U.S. Bank National Association, as Trustee

3789:  Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

3790: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR2, U.S. Bank National Association, as Trustee

3791: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR3, U.S. Bank National Association, as Trustee

3792: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR5, U.S. Bank National Association, as Trustee

3793: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR7, U.S. Bank National Association, as Trustee

3794: Citigroup Mortgage Loan Trust, Inc., Mortgage Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

8009: Banc of America Mortgage 2008-A Trust, Mortgage Pass-Through Certificates, Series 2008-A, U.S. Bank National Association, as Trustee

8011: Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2007-AMC1, U.S. Bank National Association, as Trustee

8068: MASTR Seasoned Securitization Trust 2005-1, Mortgage Pass-Through Certificates, Series 2005-1, U.S. Bank National Association, as Trustee

8070: Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC4, Mortgage Pass-Through Certificates Series 2006-BC4, U.S. Bank National Association, as Trustee

8071: Structured Asset Securities Corporation Mortgage Loan Trust 2006-BC5, Mortgage Pass-Through Certificates Series 2006-BC5, U.S. Bank National Association, as Trustee

8072: Structured Asset Securities Corporation, Mortgage Loan Trust 2007-BC4, Mortgage Pass-Through Certificates, Series 2007-BC4, U.S. Bank National Association, as Trustee

8100: Banc of America Funding Corporation 2005-6, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8101: Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-10, U.S. Bank National Association, as Trustee

8104: J.P. Morgan Mortgage Acquisition Trust 2006-WF1, U.S. Bank National Association, as Trustee

8105: Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2005-WF2, U.S. Bank National Association, as Trustee

8106: Banc of America Funding Corporation 2007-C, U.S. Bank National Association, as Trustee

8107: Banc of America Funding Corporation 2005-D Trust, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8108: Banc of America Funding Corporation 2005-7, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8109: Banc of America Funding Trust 2005-5 Trust, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8110: Banc of America Funding Corporation 2006-3, U.S. Bank National Association, as Trustee

8111: Banc of America Funding Corporation 2007-D, U.S. Bank National Association, as Trustee

8112: Banc of America Funding Corporation 2006-2, U.S. Bank National Association, as Trustee

8113: Banc of America Funding Corporation 2006-J, U.S. Bank National Association, as Trustee

8114: Banc of America Funding Corporation 2006-A, U.S. Bank National Association, as Trustee

8115: Banc of America Funding Corporation 2007-4, U.S. Bank National Association, as Trustee

8116: Banc of America Funding Corporation 2007-1, U.S. Bank National Association, as Trustee

8117: Banc of America Funding Corporation 2007-A, U.S. Bank National Association, as Trustee

8118: Banc of America Funding Corporation 2006-1, U.S. Bank National Association, as Trustee

8119: Banc of America Funding Corporation 2005-8 Trust, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8120: Banc of America Funding Corporation 2005-E Trust, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8121: Banc of America Funding Corporation 2005-2, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8122: Bear Stearns ARM Trust 2006-1, Mortgage Backed Notes, Series 2006-1, U.S. Bank National Association, as Indenture Trustee

8123: Bear Stearns ARM Trust 2005-9, Mortgage-Backed Notes, Series 2005-9, U.S. Bank National Association, as Indenture Trustee

8124: Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

8125: Prime Mortgage Trust, Mortgage Pass-Through Certificates, Series 2004-CL1, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8126: MASTR Asset Backed Securities Trust 2006-AB1, Mortgage Pass-Through Certificates, Series 2006-AB1, U.S. Bank National Association, as Trustee

8128: MASTR Alternative Loan Trust 2003-8, Mortgage Pass-Through Certificates, Series 2003-8, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8129: MASTR Alternative Loan Trust 2004-10, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8130: MASTR Alternative Loan Trust 2004-13, U.S. Bank National Association, as Trustee

8131: MASTR Alternative Loan Trust 2005-1, U.S. Bank National Association, as Trustee

8134: MASTR Alternative Loan Trust 2004-9, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8139: Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2004-8, U.S. Bank National Association, as Trustee

8140: Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2004-8, U.S. Bank National Association, as Trustee

8141: Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-12, U.S. Bank National Association, as Trustee

8146: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-10, U.S. Bank National Association, as Trustee

8147: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-2, U.S. Bank National Association, as Trustee

8148: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-3, U.S. Bank National Association, as Trustee

8149: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

8150: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-5, U.S. Bank National Association, as Trustee

8151: Citigroup Mortgage Loan Trust, Mortgage-Backed Notes, Series 2005-6, U.S. Bank National Association, as Indenture Trustee

8152: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-7, U.S. Bank National Association, as Trustee

8153: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

8154: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

"8155: Citigroup Mortgage Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2005-WF1, U.S. Bank National Association, asTrustee"

8156: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

8157: Citigroup Mortgage Loan Trust 2006-AR1, Mortgage-Backed Notes, Series 2006-AR1, U.S. Bank National Association, as Indenture Trustee

8158: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR2, U.S. Bank National Association, as Trustee

8159: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR2, U.S. Bank National Association, as Trustee

8160: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR2, U.S. Bank National Association, as Trustee

8161: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR3, U.S. Bank National Association, as Trustee

8162: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR3, U.S. Bank National Association, as Trustee

8163: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR3, U.S. Bank National Association, as Trustee

8164: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR5, U.S. Bank National Association, as Trustee

8166: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR6, U.S. Bank National Association, as Trustee

8167: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR7, U.S. Bank National Association, as Trustee

8168: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR7, U.S. Bank National Association, as Trustee

8169: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR7, U.S. Bank National Association, as Trustee

8170: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-AR9, U.S. Bank National Association, as Trustee

8171: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-2, U.S. Bank National Association, as Trustee

8172: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-AR1, U.S. Bank National Association, as Trustee

8173: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-AR1, U.S. Bank National Association, as Trustee

8174: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-AR4, U.S. Bank National Association, as Trustee

8175: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-AR5, U.S. Bank National Association, as Trustee

8176: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2007-AR8, U.S. Bank National Association, as Trustee

8177: ACE Securities Home Equity Loan Trust 2001-HE1, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A. (formerly known as First Union National Bank), as Trustee

8200: GSAA Home Equity Trust 2007-7, Asset-Backed Certificates, Series 2007-7, U.S. Bank, National Association, as Trustee
8203: Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-1, Home Equity Pass-Through Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

8204: Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-2, Home Equity Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee

8205: Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-3, Home Equity Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

8206: Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-4, Home Equity Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

8207: Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2006-4, Home Equity Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

8208: J.P. Morgan Mortgage Trust 2006-A1, U.S. Bank National Association, as Trustee

8209: JP Morgan Mortgage Trust 2006-A2, U.S. Bank National Association, as Trustee

8210: J.P. Morgan Mortgage Trust 2006-A6, U.S. Bank National Association, as Trustee

8211: JP Morgan Mortgage Trust 2006-S3, U.S. Bank National Association, as Trustee

8212: JP Morgan Mortgage Trust 2007-A4, U.S. Bank National Association, as Trustee

8213: MASTR Alternative Loan Trust 2004-11, U.S. Bank National Association, as Trustee

8214: MASTR Alternative Loan Trust 2007-1, U.S. Bank National Association, as Trustee

8216: MASTR Adjustable Rate Mortgages Trust 2004-13, Mortgage Pass-Through Certificates, Series 2004-13, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8218: MASTR Adjustable Rate Mortgages Trust 2006-2, U.S. Bank National Association, as Trustee

8219: MASTR Asset Securitization Trust 2003-11, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8220: MASTR Asset Backed Securities Trust 2005-AB1, Mortgage Pass-Through Certificates, Series 2005-AB1, U.S. Bank National Association, as Trustee

8221: MASTR Asset Backed Securities Trust 2005-WF1, U.S. Bank National Association, as Trustee

8223: Merrill Lynch Mortgage Investors, Inc., Merrill Lynch Mortgage Investors Trust, Series 2005-3, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A., as Trustee

8226: Merrill Lynch Mortgage Investors Trust, Series 2005-A9, Mortgage Loan Asset-Backed Notes, U.S. Bank National Association, as Indenture Trustee, successor in interest to Wachovia Bank, National Association, as Indenture Trustee

8227: Morgan Stanley Mortgage Loan Trust 2006-3AR, Mortgage Pass-Through Certificates, Series 2006-3AR, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8228: MSSTR 2004-1, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8229: MASTR Seasoned Securitization Trust 2005-1, Mortgage Pass-Through Certificates, Series 2005-1, U.S. Bank National Association, as Trustee

8244: STARM Mortgage Loan Trust 2007-3, Mortgage Pass-Through Certificates, Series 2007-3, U.S. Bank National Association, as Trustee

8245: Banc of America Funding Corporation 2007-6, U.S. Bank National Association, as Trustee

8248: GSAA Home Equity Trust 2007-1, Asset-Backed Certificates, Series 2007-1, U.S. Bank National Association, as Trustee

8249: MASTR Alternative Loan Trust 2004-11, U.S. Bank National Association, as Trustee

8252: MASTR Alternative Loan Trust 2005-1, U.S. Bank National Association, as Trustee

8256: MASTR Alternative Loan Trust 2007-1, U.S. Bank National Association, as Trustee

8263: Morgan Stanley Mortgage Loan Trust 2006-17XS, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8264: Morgan Stanley Mortgage Loan Trust 2006-3AR, Mortgage Pass-Through Certificates, Series 2006-3AR, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8268: Bear Stearns Asset Backed Securities I Trust 2006-AC1, Asset-Backed Certificates, Series 2006-AC1, U.S. Bank National Association, as Trustee

8269: Bear Stearns Asset Backed Securities I Trust 2006-AC1, Asset-Backed Certificates, Series 2006-AC1, U.S. Bank National Association, as Trustee

8270: Bear Stearns Asset Backed Securities I Trust 2006-AC1, Asset-Backed Certificates, Series 2006-AC1, U.S. Bank National Association, as Trustee

8271: Bear Stearns Asset Backed Securities I Trust 2006-AC1, Asset-Backed Certificates, Series 2006-AC1, U.S. Bank National Association, as Trustee

8272: Bear Stearns Asset Backed Securities I Trust 2006-AC2, Asset-Backed Certificates, Series 2006-AC2, U.S. Bank National Association, as Trustee

8273: Bear Stearns Asset Backed Securities I Trust 2006-AC2, Asset-Backed Certificates, Series 2006-AC2, U.S. Bank National Association, as Trustee

8274: Bear Stearns Asset Backed Securities I Trust 2006-AC2, Asset-Backed Certificates, Series 2006-AC2, U.S. Bank National Association, as Trustee

8275: Bear Stearns Asset Backed Securities I Trust 2006-AC3, Asset-Backed Certificates, Series 2006-AC3, U.S. Bank National Association, as Trustee

8276: Bear Stearns Asset Backed Securities I Trust 2006-AC3, Asset-Backed Certificates, Series 2006-AC3, U.S. Bank National Association, as Trustee

8277: Bear Stearns Asset Backed Securities I Trust 2005-AC9, Asset-Backed Certificates, Series 2005-AC9, U.S. Bank National Association, as Trustee

8278: Thornburg Mortgage Securities Trust 2006-1, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8279: Thornburg Mortgage Securities Trust 2005-2, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8280: Thornburg Mortgage Securities Trust 2005-3, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8281: Thornburg Mortgage Securities Trust 2005-4, U.S. Bank National Association, as Trustee

8282: Thornburg Mortgage Securities Trust 2006-4, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8283: Thornburg Mortgage Securities Trust 2006-5, U.S. Bank National Association, as Trustee, successor in interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee

8286: GSR Mortgage Loan Trust 2005-AR4, U.S. Bank National Association, as Trustee

8287: GSR Mortgage Loan Trust 2005-AR6, U.S. Bank National Association, as Trustee

8288: GSR Mortgage Loan Trust 2005-AR7, U.S. Bank National Association, as Trustee

8290: GSR Mortgage Loan Trust 2004-14, U.S. Bank National Association, as Trustee

8291: GSR Mortgage Loan Trust 2006-AR1, U.S. Bank National Association, as Trustee

8292: GSR 2004-2F, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8294: GSR 2005-5F, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association as Trustee

8295: GSR Mortgage Loan Trust 2005-6F, U.S. Bank National Association, as Trustee

8296: GSR Mortgage Loan Trust 2005-7F, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8297: GSR Mortgage Loan Trust 2005-8F, Mortgage Pass-Through Certificates, Series 2005-8F, U.S. Bank National Association, as Trustee

8298: GSR Mortgage Loan Trust 2007-1F, U.S. Bank National Association, as Trustee

8299: GSR Mortgage Loan Trust 2007-1F, U.S. Bank National Association, as Trustee

8300: GSR Mortgage Loan Trust 2007-3F, U.S. Bank National Association, as Trustee

8301: GSR Mortgage Loan Trust 2005-7F, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8302: GSR Mortgage Loan Trust 2007-3F, U.S. Bank National Association, as Trustee

8303: Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2007-1, U.S. Bank National Association, as Trustee

8305: Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

8306: Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee

8307: Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee

8308: Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

8309: Credit Suisse First Boston Mortgage Securities Corp., CSAB Mortgage-Backed Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

8320: Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

8322: SG Mortgage Securities Trust 2006-FRE2, Asset Backed Certificates, Series 2006-FRE2, U.S. Bank National Association, as Trustee

8326: Towd Point Mortgage Trust 2015-2, by U.S. Bank National Association as Indenture Trustee

8327: Towd Point Mortgage Trust 2015-6, by U.S. Bank National Association as Indenture Trustee

8335: Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC2, U.S. Bank National Association, as Trustee

8336: Structured Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2006-BC3, U.S. Bank National Association, as Trustee

8337: Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC4, U.S. Bank National Association, as Trustee

8338: Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2006-BC5, U.S. Bank National Association, as Trustee

8340: ABFC 2002-WF1 Trust, ABFC Mortgage Loan Asset-Backed Certificates, Series 2002-WF1, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, N.A. formerly known as First Union National Bank, as Trustee

8341: ABFC 2002-WF2 Trust, ABFC Mortgage Loan Asset-Backed Certificates, Series 2002-WF2, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8346: Citigroup Mortgage Loan Trust 2005-11, Mortgage-Backed Notes, Series 2005-11, U.S. Bank National Association, as Indenture Trustee

8347: Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2006-WF1, U.S. Bank National Association, as Trustee

8348: Citigroup Mortgage Loan Trust, Inc., Mortgage Pass-Through Certificates, Series 2006-WF2, U.S. Bank National Association, as Trustee

8356: Citigroup Mortgage Loan Trust 2007-WFHE4, Asset-Backed Pass-Through Certificates, Series 2007-WFHE4, U.S. Bank National Association, as Trustee

8360: Adjustable Rate Mortgage Trust 2004-3, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-3, U.S. Bank National Association, as Trustee

8361: Adjustable Rate Mortgage Trust 2004-4, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-4, U.S. Bank National Association, as Trustee

8363: Adjustable Rate Mortgage Trust 2005-10, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-10, U.S. Bank National Association, as Trustee
8364: Adjustable Rate Mortgage Trust 2005-11, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-11, U.S. Bank National Association, as Trustee

8365: Adjustable Rate Mortgage Trust 2005-12, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-12, U.S. Bank National Association, as Trustee

8366: Adjustable Rate Mortgage Trust 2005-2, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-2, U.S. Bank National Association, as Trustee

8367: Adjustable Rate Mortgage Trust 2005-3, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-3, U.S. Bank National Association, as Trustee

8368: Adjustable Rate Mortgage Trust 2005-4, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

8369: Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5, U.S. Bank National Association, as Trustee

8370: Adjustable Rate Mortgage Trust 2005-7, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-7, U.S. Bank National Association, as Trustee

8371: Adjustable Rate Mortgage Trust 2005-8, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

8372: Adjustable Rate Mortgage Trust 2005-9, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-9, U.S. Bank National Association, as Trustee

8373: Adjustable Rate Mortgage Trust 2006-1, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

8374: Adjustable Rate Mortgage Trust 2005-9, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-9, U.S. Bank National Association, as Trustee

8375: Adjustable Rate Mortgage Trust 2006-2, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee

8376: Adjustable Rate Mortgage Trust 2006-3, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

8378: Adjustable Rate Mortgage Trust 2004-1, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-1, U.S. Bank National Association, as Trustee

8379: Adjustable Rate Mortgage Trust 2004-2, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-2, U.S. Bank National Association, as Trustee

8380: Adjustable Rate Mortgage Trust 2004-2, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2004-2, U.S. Bank National Association, as Trustee

8381: Adjustable Rate Mortgage Trust 2005-8, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

8382: Adjustable Rate Mortgage Trust 2005-4, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

8383: Adjustable Rate Mortgage Trust 2005-5, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2005-5, U.S. Bank National Association, as Trustee

8389: Bear Stearns ARM Trust, Mortgage Pass-Through Certificates, Series 2005-12, U.S. Bank National Association, as Trustee
8397: Bayview Financial Mortgage Pass-Through Certificates, Series 2004-D, U.S. Bank National Association, as Trustee, successor in interest to Wachovia Bank, National Association, as Trustee

8399: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2002-26, U.S. Bank National Association, as Trustee, successor in interest to Bank One, National Association, as Trustee

8400: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2002-29, U.S. Bank National Association, as Trustee, successor in interest to Bank One, National Association, as Trustee

8401: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2002-30, U.S. Bank National Association, as Trustee, successor in interest to Bank One, National Association, as Trustee

8402: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2002-34, U.S. Bank National Association, as Trustee, successor in interest to Bank One, National Association, as Trustee

8403: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-1, U.S. Bank National Association, as Trustee, successor in interest to Bank One, National Association, as Trustee

8404: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2003-17, U.S. Bank National Association, as Trustee, successor in interest to Bank One, National Association, as Trustee

8408: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage Pass-Through Certificates, Series 2003-AR26, U.S. Bank National Association, as Trustee

8409: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage Pass-Through Certificates, Series 2003-AR28, U.S. Bank National Association, as Trustee
8410: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage Pass-Through Certificates, Series 2003-AR30, U.S. Bank National Association, as Trustee

8411: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-1, U.S. Bank National Association, as Trustee

8412: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage Pass-Thru Certificates, Series 2004-3, U.S. Bank National Association, as Trustee

8413: Credit Suisse First Boston Mortgage Acceptance Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7, U.S. Bank National Association, as Trustee

8414: Credit Suisse First Boston Mortgage Acceptance Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-7, U.S. Bank National Association, as Trustee

8415: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-8, U.S. Bank National Association, as Trustee

8416: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-8, U.S. Bank National Association, as Trustee

8417: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR1, U.S. Bank National Association, as Trustee

8418: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR2, U.S. Bank National Association, as Trustee

8419: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR3, U.S. Bank National Association, as Trustee

8420: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR4, U.S. Bank National Association, as Trustee

8421: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR5, U.S. Bank National Association, as Trustee

8422: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR6, U.S. Bank National Association, as Trustee

8423: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR7, U.S. Bank National Association, as Trustee

8424: Credit Suisse First Boston Mortgage Securities Corp. CSFB Mortgage-Backed Pass-Through Certificates, Series 2004-AR8, U.S. Bank National Association, as Trustee

8425: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-1, U.S. Bank National Association, as Trustee

8426: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-10, U.S. Bank National Association, as Trustee

8427: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-10, U.S. Bank National Association, as Trustee

8428: Credit Suisse First Boston Mortgage Acceptance Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-11, U.S. Bank National Association, as Trustee

8429: Credit Suisse First Boston Mortgage Acceptance Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-11, U.S. Bank National Association, as Trustee

8430: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-12, U.S. Bank National Association, as Trustee

8431: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-12, U.S. Bank National Association, as Trustee

8432: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-2, U.S. Bank National Association, as Trustee

8433: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-3, U.S. Bank National Association, as Trustee

8434: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

8435: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-4, U.S. Bank National Association, as Trustee

8436: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage Pass-Thru Certificates, Series 2005-5, U.S. Bank National Association, as Trustee

8437: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage Pass-Thru Certificates, Series 2005-5, U.S. Bank National Association, as Trustee

8438: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-6, U.S. Bank National Association, as Trustee

8439: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-7, U.S. Bank National Association, as Trustee

8440: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-7, U.S. Bank National Association, as Trustee

8441: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

8442: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-8, U.S. Bank National Association, as Trustee

8443: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-9, U.S. Bank National Association, as Trustee

8444: Credit Suisse First Boston Mortgage Securities Corp., CSFB Mortgage-Backed Pass-Through Certificates, Series 2005-9, U.S. Bank National Association, as Trustee

8445: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

8446: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-1, U.S. Bank National Association, as Trustee

8447: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee

8448: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee

8449: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

8450: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-3, U.S. Bank National Association, as Trustee

8451: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-4, U.S. Bank National Association, as Trustee

8452: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-5, U.S. Bank National Association, as Trustee

8453: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-6, U.S. Bank National Association, as Trustee

8454: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7, U.S. Bank National Association, as Trustee

8455: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-7, U.S. Bank National Association, as Trustee

8456: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-8, U.S. Bank National Association, as Trustee

8457: Credit Suisse First Boston Mortgage Securities Corp., CSMC Mortgage-Backed Pass-Through Certificates, Series 2006-8, U.S. Bank National Association, as Trustee

9924: U.S. Bank National Association, not in its individual capacity but solely as trustee for the RMAC Trust, Series 2016-CTT

9934: U.S. Bank, N.A., not in its individual capacity, but solely as trustee of the NRZ Pass-Through Trust X

9936: U.S. Bank, N.A., not in its individual capacity, but solely as trustee of the NRZ Pass-Through Trust V-B

9937: U.S. Bank National Association, not in its individual capacity, but solely as trustee of the NRZ Inventory Trust

9943: U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee for CVI LCF Mortgage Loan Trust I

9944: U.S. Bank National Association, not in its individual capacity, but solely as trustee of the NRZ Pass-Through Trust IX

9947: U.S. Bank National Association, not in its individual capacity, but solely as trustee of the NRZ Pass-Through Trust IX-B